IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEBRA S.,[1] <br><br>  Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>  Defendant. | Case No. 3:22-CV-680-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Debra S. ("Plaintiff") appeals to the district court from a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). For the following reasons, the Commissioner's decision is affirmed.

## PROCEDURAL HISTORY

Plaintiff applied for DIB in January 2020, alleging disability beginning on February 13, 2017. (Tr. 46, 166.) The application initially was denied on September 15, 2020 (Tr. 46), and it was denied upon reconsideration on December 3, 2020 (Tr. 57). Plaintiff timely requested a hearing, and a hearing was held before Administrative Law Judge Daniel Curran ("ALJ") on July 28, 2021. (Tr. 26.) On October 4, 2021, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled from February 13, 2017, through the date of the decision. (Tr. 14-22.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.)

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See FED. R. CIV. P. 5.2(c) and the Advisory Committee Notes thereto.

Plaintiff now appeals the denial of DIB directly to this Court. Plaintiff raises one issue: whether the ALJ erred by finding that Plaintiff's right shoulder impairment is a non-severe impairment that imposed no work-related limitations for any 12-month period he adjudicated.[2] (Doc. 17). The Commissioner timely filed a brief in opposition. (Doc. 19).

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* The Supreme Court defines substantial evidence as "more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

"An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Where an ALJ ignores a whole line of evidence contrary to the ruling, however, a district court cannon assess whether the ruling rested on substantial

---

[2] Although Plaintiff's DIB application referenced major depression, hypertension, a right shoulder problem, a right knee problem, sleep apnea, and migraines, Plaintiff only appeals the ALJ's determination as to her right shoulder impairment. Accordingly, the Court only discusses the facts and evidence relevant to her right shoulder.

evidence and must remand to the agency. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

## DISABILITY UNDER THE SOCIAL SECURITY ACT

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). "A claimant need not be disabled at the date of his hearing; rather, he qualifies for benefits if a disability existed for any consecutive twelve-month period during the relevant time frame." *Mara S. on behalf of C.S. v. Kijakazi*, No. 19-CV-8015, 2022 WL 4329033, at *8 (N.D. Ill. Sept. 19, 2022) (citing 20 C.F.R. § 404.320(b)(3)).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities demonstrated by accepted diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth five questions for the ALJ to consider in assessing whether a claimant is disabled: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment or combination of impairments? (3) Does the impairment meet or equal any impairment enumerated in the regulations as being so severe as to preclude substantial gainful activity? (4) Does the claimant's residual

functional capacity leave him unable to perform his past relevant work? and (5) Is the claimant unable to perform any other work existing in significant numbers in the national economy? *See* 20 C.F.R. § 404.1520; *Kuhn v. Kijakazi*, No. 22-1389, 2022 WL 17546947, at *2 (7th Cir. Dec. 9, 2022).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The claimant bears the burden of proof at steps one through four. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

## EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is limited to the sole point raised by Plaintiff.

**I.     Relevant Medical Records**

Plaintiff saw her primary care physician, Dr. Suthan Sambasivan, in July 2018, at the age of 61, and complained of mild tenderness in her right shoulder with somewhat limited rotation. (Tr. 296-97.) Dr. Sambasivan instructed Plaintiff to apply moist heat, perform stretching exercises, and to follow up in two to three weeks if the pain did not improve. (Tr. 297.) Dr. Sambasivan also prescribed naproxen. (*Id.*)

In August 2018, Plaintiff was examined at BJC Medical Group Orthopedics &

Sports Medicine. (Tr. 554.) Plaintiff complained of right shoulder pain that radiated down her arm for the past 10 months and that was not alleviated by Tylenol or topical creams. (*Id.*) She described the pain as sharp, burning, aching, and severe at 6 out of 10. (*Id.*) Plaintiff also stated that the pain was worse with activity and when she tried to lay on it to sleep. (*Id.*) An x-ray of Plaintiff's shoulder showed arthritic changes with subchondral sclerosis, bone-on-bone joint space narrowing, and osteophyte formation. (Tr. 556.) Plaintiff was diagnosed with primary osteoarthritis of the right shoulder and was given a steroid injection, which provided relief. (Tr. 551, 557-58.) Plaintiff had another steroid injection in January 2019. (Tr. 551.)

On February 4, 2019, Plaintiff saw Dr. Randall Rogalsky, an orthopedic surgeon, for evaluation of her right shoulder pain. (Tr. 220.) Plaintiff noted her pain was increasingly severe with a decreased range of motion. (*Id.*) She could no longer reach the back of her head or the small of her back. (*Id.*) An examination and x-rays confirmed acromioclavicular degenerative joint disease. (*Id.*) On February 21, 2019, Plaintiff had an MRI, which confirmed acromioclavicular degenerative joint disease and also showed subacromial impingement and bursitis/tendinitis. (Tr. 218.) The MRI also confirmed there was no rotator cuff tear. (*Id.*) Dr. Rogalsky discussed the findings with Plaintiff on March 11, 2019, and plans were made to proceed with acromioclavicular decompression surgery. (*Id.*)

On May 1, 2019, Plaintiff had right shoulder decompression surgery. (Tr. 233, 236). Plaintiff returned for a follow-up appointment on May 10, 2019. (Tr. 216.) She stated that she was doing well with pain at a level 4 out of 10. (*Id.*). The doctor noted the incision

was benign, there was no wound separation or drainage, and no evidence of complication. (*Id.*) Her range of motion was 75 percent. (*Id.*) By June 2019, Plaintiff reported doing everything she wants to do except hair care at the back of her head. (Tr. 215.) An examination confirmed 90 percent normal motion with 4+ out of 5 strength. (*Id.*)

Plaintiff attended eight physical therapy ("PT") sessions before stopping therapy due to a lack of insurance. (Tr. 222-23.) The therapist reported that Plaintiff was "making progress" in PT but continued to have significant weakness throughout her shoulder. (*Id.*)

On November 4, 2020, Plaintiff went to the ER in Grapevine, Texas, for right arm and right leg numbness that had started about three hours earlier. (Tr. 591.) On examination, the doctor noted that her right shoulder was frozen and tender. (Tr. 593.) Plaintiff was admitted for a stroke evaluation, and a CT scan showed she had a stroke with non-disabling symptoms and rapid improvement. (Tr. 593-603).

## II.     State Agency Examiners

State-agency medical expert Dr. Tina Ward found that Plaintiff had the medically determinable impairments of Osteoarthritis and Allied Disorders and that it was "severe," but ultimately determined there was insufficient evidence to evaluate the claim. (Tr. 43-44.) On reconsideration, state-agency medical expert Dr. Leigh McCary noted that Plaintiff alleged her conditions had become more severe and caused her greater limitation. (Tr. 52). Because Plaintiff alleged her condition had changed, new forms were sent to her. (*Id.*) Plaintiff did not return them, however, despite attempts to reach her via mail, letters, and phone calls. (*Id.*) Thus, Dr. McCary determined there was insufficient

evidence to make a medical decision. (*Id.*)

### III. Evidentiary Hearing

Plaintiff appeared via telephone and was represented by counsel at the hearing on July 28, 2021. (Tr. 27-39.) Vocational expert Tammie Alfaro also appeared by telephone. (*Id.*)

Plaintiff testified that beginning on February 13, 2017, she had pain in her right arm from her elbow to her shoulder, which prevented her from moving it up and down freely. (Tr. 29.) She could not raise her right arm above her head, and lifting items such as a gallon of milk required two hands. (Tr. 30.)

Plaintiff testified that she had previously worked as a laborer with carpenters and roofers. (Tr. 37.) She testified that she would take supplies like shingles up to them and help tear off roofs. (*Id.*) Plaintiff had worked as a custodian for a church from June 2010 to February 2011 and as a general laborer for a staffing company from August 2013 to February 2017. (Tr. 157).

### DECISION OF THE ALJ

In reaching his decision, the ALJ considered the entire record.

At step one, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 13, 2017. (Tr. 16.)

At step two, the ALJ concluded that Plaintiff had the following medically determinable impairments: right shoulder degenerative joint disease, obstructive sleep apnea, hypertension, high lipids, obesity, and a mood disorder. (*Id.*) The ALJ further concluded that Plaintiff did not have an impairment or combination of impairments that

significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments. (*Id.*)

In coming to this conclusion, the ALJ noted that Plaintiff alleged an inability to work due to hypertension, sleep apnea, a depressive disorder, and joint problems. (Tr. 17.) Regarding her shoulder, Plaintiff testified that she could not work because she could not move her shoulder up and down freely. (*Id.*)

The ALJ then determined that Plaintiff's allegations concerning her impairments and the impact on her ability to work were not sufficiently supported by the record as a whole in light of the objective medical evidence, Plaintiff's medical history, and the degree of medical treatment required. (Tr. 18.) He also found Plaintiff's description of her symptoms and limitations to be generally unpersuasive. (*Id.*)

Specifically with regard to Plaintiff's right shoulder degenerative joint disease, the ALJ noted that although she underwent decompression surgery, the medical records showed her incision was benign, there was no wound separation, she was neurovascularly intact, and there was no evidence of complication. (Tr. 19.) The ALJ further opined that while treatment for degenerative joint disease would normally weigh somewhat in Plaintiff's favor, the surgery was generally successful in controlling Plaintiff's symptoms, as the record does not reflect any long-term treatment after her 10-day postoperative follow-up. (*Id.*) The ALJ also considered the opinions of the State agency medical consultants, which, at the initial and reconsideration levels, he found generally persuasive. (Tr. 20.)

The ALJ found that while Plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms, the evidence established "no more than a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with her ability to perform work activity." (*Id.*). The ALJ then concluded that Plaintiff's impairments, considered singly and in combination, would not be expected to more than minimally interfere with the ability to perform basic work activities. (Tr. 21.) Thus, Plaintiff did not have a "severe" impairment, nor did her non-severe impairments add up to a severe "combination." (*Id.*) Thus, the ALJ determined that Plaintiff was not disabled as defined in the SSA. (*Id.*)

## Discussion

### I. The ALJ's Decision Is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to explain how the evidence supported a finding that her right shoulder impairment was non-severe. (Doc. 17). Plaintiff testified that she is right-handed and the ability to move her right arm above her head is limited. (*Id.*) While the ALJ acknowledged that Plaintiff underwent right shoulder surgery, she argues, the ALJ's analysis of her right shoulder impairment began there and ended with his discussion of her condition "10-days post-operatively." (*Id.*) Because the ALJ did not discuss Plaintiff's condition prior to her surgery or after her last post-operative visit on May 10, 2019, she argues, meaning judicial review is impossible. (*Id.*)

Plaintiff points to evidence that in June 2019, the physical therapist reported that Plaintiff continued to have significant weakness in her right shoulder. (*Id.*) Plaintiff also refers to her medical records from November 2020 where she was found to have a frozen

shoulder. (*Id.*) Finally, while the ALJ noted that Plaintiff did not have a "longitudinal treatment history" after May 2019, the ALJ failed to consider that Plaintiff lost her health insurance in 2019. (*Id.*) Even if Plaintiff's shoulder injury had healed completely in May 2019, she argues, the ALJ still erred because her right shoulder impairment caused more than minimal limitation for at least a 12-month period. (*Id.*) Plaintiff asserts that the ALJ's failure to build a logical bridge between the evidence and his conclusion mandates remand for further administrative proceedings.

In response, the Commissioner argues the ALJ reasonably determined that Plaintiff failed to meet her burden of producing evidence that her right shoulder condition significantly limited her ability to work. The Commissioner avers that a claimant bears the burden of producing evidence of disabling functioning, and an ALJ may presume that a claimant who was represented by counsel before the agency made her best case for benefits. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Furthermore, the Commissioner contends, Plaintiff produced no evidence that her conditions caused any limitations aside from her own subjective testimony, and a district court will only disturb the weight an ALJ gives to a claimant's subjective complaints if the ALJ was patently wrong. *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). An ALJ is only "patently wrong" if his decision lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

The Court finds that the ALJ appropriately considered the objective medical evidence, Plaintiff's course of treatment, her hearing testimony, and the opinions of the state medical examiners in determining that Plaintiff's shoulder impairment was not

severe. Plaintiff argues that the ALJ did not consider her pre-surgery or post-surgery impairment in determining whether any 12-month period of disability existed, but there are minimal records demonstrating such impairment, and an ALJ is not required to address every piece of evidence in the record. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Plaintiff refers to an examination and orthopedic referral that took place in April 2016, but that was 10 months before Plaintiff's alleged onset date of February 13, 2017. The next record that Plaintiff refers to is from July 30, 2018, where she had mild tenderness and a somewhat limited range of motion. Plaintiff had a steroid injection in August 2018, which provided relief, and again in January 2019. Plaintiff then had surgery—less than 12 months after her July 2018 visit—on May 1, 2019. By June 2019, Plaintiff reported 90 percent normal motion. While Plaintiff refers to a frozen shoulder on November 4, 2020, her symptoms included right arm and leg numbness, and it was determined that Plaintiff had a stroke. There is no evidence that her frozen shoulder was related to her prior shoulder condition and not the result of the stroke she experienced. The ALJ also noted that on November 25, 2020, Plaintiff had a normal range of motion (Tr. 20, 532.) The records support the ALJ's conclusion that Plaintiff was not disabled for any 12-month period.

Plaintiff next argues that the ALJ erred in failing to consider the fact that she lost health insurance in 2019 and, thus, she could not seek further treatment. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (an ALJ should explore the claimant's reasons for a lack of medical care, including inability to afford medical treatment, before drawing a

negative inference from the lack of records). The burden was on Plaintiff, however, to prove that she was disabled as a result of her shoulder impairment. Counsel certainly could have asked Plaintiff at the hearing to explain whether she needed further treatment for her shoulder and, if so, why she did not seek it. *See Summers*, 864 F.3d at 527; *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (explaining that "a claimant represented by counsel is presumed to have made his best case before the ALJ"). Counsel's failure to elicit this testimony did not shift the burden of proof to the ALJ.

In sum, no medical provider found that Plaintiff had significant limitations for a period of 12 consecutive months, and the ALJ did not find Plaintiff's subjective account of disability to be persuasive. Accordingly, the Court finds that the record includes substantial evidence supporting the ALJ's decision.

## CONCLUSION

For these reasons, the Commissioner's final decision denying Plaintiff's application for social security disability benefits is **AFFIRMED**, and this action is **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security.

**IT IS SO ORDERED.**

DATED: September 29, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judges**